Filed 4/5/13  P. v. Harris CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARTIN LAMONT HARRIS,<br><br>    Defendant and Appellant. | B240656<br><br>(Los Angeles County<br>Super. Ct. No. NA084631) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Richard R. Romero, Judge.  Affirmed in part, vacated in part, and remanded with directions.

        Robert Booher, under appointment by the Court of Appeal, for Defendant and Appellant.

        Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Viet H. Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Martin Lamont Harris appeals from the judgment entered following his plea of no contest to bringing drugs into jail (Pen. Code, § 4573). The court sentenced appellant to prison for three years. We affirm the judgment, except we vacate appellant's sentence and remand the matter with directions.

## FACTUAL SUMMARY

The record reflects that on January 31, 2010, appellant brought drugs into the Long Beach jail.

## ISSUES

Appellant claims the trial court (1) erroneously failed to conduct a *Marsden* hearing on January 9 and January 23, 2012, and (2) erroneously failed to exercise informed discretion when sentencing him.

## DISCUSSION

1. *The Trial Court Did Not Err by Failing to Conduct a Marsden Hearing on January 9 or 23, 2012.*

a. *Pertinent Facts.*

We set forth the pertinent facts below and highlight those upon which we particularly rely in our later analysis. The felony complaint in the present case (superior court case No. NA084631) (the present case) alleged as count 1 that on or about January 31, 2010, appellant brought drugs into jail, and alleged a count 2. On February 9, 2010, pursuant to negotiations, appellant pled no contest to count 1, and the court suspended imposition of sentence, placed him on formal probation for one year, and dismissed count 2. In December 2011, the court scheduled a probation violation hearing in the present case, and a preliminary hearing in a new case (new case) for January 9, 2012.

On January 9, 2012, the court called both cases, indicated there had been a discussion about a *Faretta*[1] waiver, and asked appellant's counsel, Carolyn Disabatino, whether appellant was asking to represent himself. *Appellant and Disabatino each said yes*. After the court advised appellant in detail as to what would occur if the court that

---

[1] *Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562] (*Faretta*).

2

day granted appellant's motion to represent himself on both cases, appellant agreed to make his request later.

During the ensuing preliminary hearing in the new case, evidence was presented appellant provided false identification information to police (i.e., evidence of a violation of Pen. Code, § 148.9, subd. (a)). Appellant was held to answer on the counts at issue at the preliminary hearing in the new case and the court found appellant in violation of probation in the present case based on the evidence appellant had provided false identification information to police.

On January 23, 2012, the court suggested a possible disposition of both cases but appellant denied he wanted the proposed disposition and indicated he wanted a jury trial. Appellant later stated he did not want Disabatino on his case.

The following then occurred as part of appellant's *Faretta* waiver: "[The Court:] Have you done this before, sir? Gone pro per? [¶] [Appellant]: Well, no. [¶] The Court: So there is a procedure, a lot of questions I have to ask you. I also have to find out whether you really want to go pro per or if there is something that can be worked out between the two of you. If there is something that can be worked out between the two of you, I need to ask the prosecutor to leave, and we will see whether we can resolve that. In my opinion, it is better for you to try to resolve things between you and your lawyer, but if you don't want to do that, we won't do that. [¶] [Appellant]: I don't want her on my case. [¶] The Court: That's not what I asked. [¶] [Appellant]: *She was on my case before, and me and her had a conflict of interest.* [¶] The Court: That's fine." (Italics added.) The following later occurred: "The Court: *You want to represent yourself, right?* [¶] [Appellant]: *Yes.*" (Italics added.)

Later, the following occurred: "[Appellant]: I want a jury trial. [¶] The Court: You'll get one, sir. [¶] Do you understand, sir, that representing yourself -- [¶] [Appellant]: I go co-counsel with a state-appointed attorney, then. [¶] The Court: Listen. If you do not follow the court's instructions or misbehave in some fashion, your right to represent yourself will be terminated and an attorney will represent you whether

3

you want the attorney or not. [¶] [Appellant]: *I don't want no attorney to represent me, period.*" (*Sic.*)

The following then occurred: "[The Court:] If you don't follow my directions, if you talk after I tell you not to speak, if you misbehave, you can't represent yourself. [¶] Do you understand that? [¶] [Appellant]: *I can't represent myself?* [¶] *That's a Fifth Amendment and Sixth Amendment violation.* [¶] The Court: *Do you understand that your right to represent yourself will end?* [¶] . . . [¶] The Court: I'm not asking whether you agree. I'm asking whether you understand. [¶] [Appellant]: *Yes.* I want a evidentiary hearing." (Italics added.) The court later stated, "*The court finds that under the law, Mr. Harris has made a knowing, understanding, intelligent waiver of his right to assistance of counsel with knowledge of the consequences.*" The following later occurred: "The Court: . . . [¶] *Do you want to represent yourself on both cases, the Prop 36 for which you're facing sentencing --* [¶] [Appellant]: *Yes.* [¶] The Court: *-- as well as the new case?* [¶] [Appellant]: *Yes.*" (Italics added.) Appellant subsequently began representing himself.

After further proceedings concerning both cases, the court indicated appellant was ineligible for Proposition 36 probation in the present case because he was also charged with identity theft. Appellant indicated Disabatino misled appellant and said he "was under 148.9 charge." Appellant later stated, "I know she completely continuously misled me. And, see, there are some things, your Honor, that you probably don't know, either. She was my lawyer in . . . 2003, and me and her had a complete conflict of interest. And I believe that all of this is act of revenge against me as a person in this court, and she completely sabotaged my . . . Prop 36 this time because me and her did never get along in 2003. I had to fire her, and me and her was in complete high style conflict of interest." (*Sic.*)

The following then occurred: "[Appellant:] When I seen her pick up my file to become my lawyer, I'm thinking how is this possible, me and this woman ain't never got along? That was completely out of line, your Honor, for her to even be my lawyer. [¶]

4

. . . I filed a complaint against her in the State Bar in 2003, and I filed a complaint against the judges in the Commission [on] Judicial Performance for the same thing. I'm thinking how is this woman getting my file and come in here trying to represent me when I done filed all this stuff against her? That was way out of line. [¶] The Court: But that's all in the past now. I notice you seem a little less tense, more relaxed now. [¶] [Appellant]: Yes." (*Sic*.) On February 21, 2012, in the present case, the court revoked and terminated appellant's probation and sentenced him to prison for three years.

b. *Analysis.*

Appellant claims the trial court erroneously failed to conduct a *Marsden*[2] hearing on January 9 and 23, 2012. We disagree. "In *People v. Marsden* (1970) 2 Cal.3d 118, we held that a defendant is deprived of his constitutional right to the effective assistance of counsel when a trial court denies his motion to substitute one *appointed* counsel for *another* without giving him an opportunity to state the reasons for his request." (*People v. Ortiz* (1990) 51 Cal.3d 975, 980, fn. 1, italics added.) "A trial judge should not be obligated to take steps toward *appointing new* counsel where defendant does not even seek *such* relief." (*People v. Gay* (1990) 221 Cal.App.3d 1065, 1070, italics added.)

"The court's duty to conduct the [*Marsden*] inquiry arises 'only when the defendant *asserts* directly or by implication that his counsel's performance has been so inadequate as to deny him his *constitutional right to effective counsel*.' [Citations.]" (*People v. Lara* (2001) 86 Cal.App.4th 139, 151, italics added.) "Requests under . . . *Marsden . . . must be clear and unequivocal*. [Citations.]" (*People v. Rivers* (1993) 20 Cal.App.4th 1040, 1051, fn. 7, italics added.) In order to make a *Marsden* motion, there must be a "*clear* indication by defendant that he wants a substitute attorney." (*People v. Lucky* (1988) 45 Cal.3d 259, 281, fn. 8, italics added.) A defendant is entitled to relief if the record clearly shows that the defendant's appointed attorney is not providing adequate representation or that the defendant and said attorney have become

---

[2]     *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

embroiled in such an irreconcilable conflict that ineffective representation is likely to result. (*People v. Jackson* (2009) 45 Cal.4th 662, 682.)

We have recited the pertinent facts, and they do not reflect that on January 9 or 23, 2012, appellant clearly and unequivocally asked for substitution of counsel, clearly indicated he wanted a substitute attorney, or asserted counsel's performance was so inadequate as to deny appellant his right to effective assistance of counsel.

Instead, the record, fairly read, reflects appellant wanted to represent himself, not because Disabatino was providing ineffective assistance of counsel in the present case or because anything had occurred in the present case causing an irreconcilable conflict to develop between appellant and Disabatino, but because appellant allegedly lacked confidence in Disabatino based on her previous representation of appellant in a completely different case in 2003. The fact that the court suggested it might discuss with appellant and Disabatino in the prosecutor's absence whether appellant and Disabatino might work out between them any unspecified issues, and the fact that appellant later suggested he wanted advisory counsel, did not mandate a *Marsden* inquiry. The trial court did not err by failing to conduct a *Marsden* hearing, because appellant never made a *Marsden* motion. (Cf. *People v. Bradford* (1997) 15 Cal.4th 1229, 1372-1373; *People v. Clark* (1992) 3 Cal.4th 41, 105; *People v. Burton* (1989) 48 Cal.3d 843, 855.)

2. *The Trial Court Erroneously Failed to Exercise Informed Discretion as to Whether to Reinstate Appellant's Proposition 36 Probation.*

a. *Pertinent Facts.*

As indicated, in the present case (case No. NA084631), on February 9, 2010, pursuant to negotiations, appellant pled no contest to bringing drugs into jail (count 1) and the court (Judge Arthur Jean, Jr.) suspended imposition of sentence and placed appellant on formal probation for one year pursuant to Proposition 36, on the condition, inter alia, that he obey the law. The court also, pursuant to the negotiations, dismissed count 2 in the present case. That count alleged appellant possessed methamphetamine in violation of Health and Safety Code section 11377, subdivision (a), a felony. In April

6

2010, the court called the case for a progress report, appellant failed to appear, and the court terminated his Proposition 36 probation (probation).

On October 29, 2010, appellant appeared in court and admitted he violated probation based on his previous failure to appear. The court reinstated probation. In January 2011, the court called the case for a progress report, appellant failed to appear, and the court terminated probation. On December 6, 2011, appellant appeared in court and the court (Judge James Otto) continued the case for a probation violation hearing, ultimately to December 20, 2011.

On December 20, 2011, the court (Judge Judith Meyer) called the present case for a probation violation hearing, revoked appellant's probation, and ordered that the present case trail the preliminary hearing in a new case of appellant (case No. NA090771) (new case).

On January 9, 2011, Judge Meyer called both cases. A police officer's testimony during the preliminary hearing in the new case provided evidence that on December 3, 2011, appellant, as charged in the complaint in that case, possessed methamphetamine in violation of Health and Safety Code section 11377, subdivision (a), a felony (count 1) and committed identity theft in violation of Penal Code section 530.5, subdivision (c)(1), a misdemeanor (count 2). The officer also testified appellant thrice provided a false name and birth date to the officer. Appellant was held to answer on both counts in the new case and the court found appellant in violation of probation in the present case based on the testimony appellant had provided false identification information to the officer. Both cases were continued to January 23, 2012.

On January 23, 2012, the court (Judge Richard R. Romero) granted appellant's motion to represent himself in both cases. Appellant pled not guilty to the charges, and denied the allegations, in the new case. The court indicated appellant would receive a copy of the information in the new case.

After the court and appellant discussed the new case, the following occurred: "[Appellant]: The [provisions] of Prop 36, which the prosecutor seem to be in violation

7

of because this only my second violation on Prop 36 and -- [¶] The Court: So you're saying you're entitled to Prop 36 on this case? [¶] [Appellant]: Yes. I was -- [¶] The Court: There is a problem, count 2. Prop 36 says if there is a charge like identity theft along with the Prop 36 case, you don't get Prop 36. It's a provision of law. It has to be all a Prop 36 to get Prop 36. If there is something in there like assault, resisting arrest – often I see resisting arrest in there – you can't get Prop 36." (*Sic*.) The court continued the case to February 21, 2012.

On February 21, 2012, the court (Judge Romero) called both cases. Appellant argued, inter alia, Proposition 36 called for reinstatement of his probation, and allowed the court to order him to participate in a more restrictive drug program, as an alternative to imprisonment.

The court indicated Judge Meyer had found appellant in violation of probation in the present case based on a non-drug-related reason, i.e., the fact he had provided false identification information to police. The following later occurred: "[The Court:] But, as you know, if you violated Prop 36 in a non-drug-related manner, then Prop 36 can end, and you are subject to regular criminal sentencing. That's the theory why you're here for criminal sentencing on the former Prop 36 case, because -- [¶] [Appellant:] I only had one Prop 36, and it was a one-year probation sentence. [¶] The Court: If you violate Prop 36 once in a non-drug-related way, Prop 36 ends and then you have criminal sentencing. So the theory is that you violated your Prop 36 by giving false information to a police officer, a criminal offense. So that ends Prop 36 for you, and you are subject to regular criminal sentencing. That's the theory. If you want to address that, I'll hear you."

Appellant stated, ". . . Your Honor, well, the theory of me being in violation of it wasn't no violation because you allowed to have a alias name." (*Sic*.) Appellant told the court he truthfully had told police his name was Michael Harris and he had never provided false information to the police. The court stated, "My position is to defer to Judge Meyer since she held the evidentiary hearing on this narrow issue." After the

8

prosecutor agreed with the court, the court stated, "there is a basis for the sentencing." The court repeatedly asked appellant if there was any reason why the court should not proceed with "sentencing" or pronounce "sentence," and appellant reiterated the court should reinstate his Proposition 36 probation.

The trial court recited the history of the proceedings in the present case consistent with information reflected in minute orders, then asked the prosecutor for his position concerning what "sentence" the court should impose. The prosecutor asked the court to sentence appellant to prison for three years. The court later told appellant, "We are on the issue of what sentence I should impose. So if you want to address that, I suggest you address that because the D.A. has asked for three years." Appellant indicated, inter alia, he wanted a doctor to examine him because of appellant's drug problem so he could participate in a drug program. The court replied, "[Appellant], I am going to try to determine what your credits are, sir." After calculating precommitment credit in the present case, the court revoked and terminated probation in the present case and sentenced appellant to prison for the upper term of three years. In light of that sentence, the prosecutor moved, "pursuant to section 1382," (*sic*) to dismiss the new case and the court granted the motion.

b. *Analysis.*

Appellant claims the trial court erroneously failed to exercise its informed discretion when sentencing him. We agree.

(1) *The Trial Court Erroneously Concluded on January 23, 2012, that Appellant Was Ineligible for Proposition 36 Probation.*

". . . 'By its terms, Proposition 36 *requires* the court to grant probation with a drug treatment condition to any person convicted of a nonviolent drug possession offense and prohibits incarceration as a condition of probation.' [Citation.] Under Proposition 36, persons convicted of a nonviolent drug offense *are entitled* to Proposition 36 probation under [Penal Code] section 1210.1, subdivision (a), *unless* they meet one of the express

9

statutory disqualifications specified in subdivision (b).[3] (See *People v. Esparza* (2003) 107 Cal.App.4th 691, 699 ['When a defendant is eligible for Proposition 36 treatment, it is *mandatory unless* he is disqualified by other statutory factors . . . .'].)" (*People v. Castagne* (2008) 166 Cal.App.4th 727, 732 (*Castagne*), italics added.)

We note at the outset that, as discussed below, on January 23, 2012, the trial court (Judge Romero) erroneously concluded appellant was statutorily disqualified from participating in Proposition 36 probation. On that date, after the court and appellant discussed pretrial matters pertaining to the new case, appellant shifted the topic, referring to Proposition 36 and, in particular, to his "second violation on Prop 36." Appellant, by the quoted language, was clearly referring to the present case, which was the only case in which he had suffered a second violation of Proposition 36 probation.

The court then asked if appellant was saying he was entitled to Proposition 36 "on this case," and appellant said yes. The court's subsequent comments, fairly construed, indicate the court viewed "count 2" as a "problem" because it charged identity theft, and if there was a "charge like identity theft *along with the Prop 36 case*" (italics added), that is, *along with the present case which was a Proposition 36 case*, "you don't get Prop 36." Phrased differently, the trial court was indicating that although appellant otherwise might have been entitled to Proposition 36 probation in the present case (case No. NA084631), count 2 charged identity theft, and when a count charged a crime like identity theft, the defendant was, as a matter of law, not entitled to such probation in the present case, or at all.

The trial court cited no authority for its position. However, the only express statutory disqualification that the trial court might have been referring to is that found in Penal Code section 1210.1, subdivision (b)(2) (see fn. 3, *ante*). However, that

---

**3** Penal Code section 1210.1, subdivision (b) states, in relevant part, "Subdivision (a) shall not apply to any of the following: [¶] . . . [¶] (2) Any defendant who, in addition to one or more nonviolent drug possession offenses, has been convicted in the same proceeding of a misdemeanor not related to the use of drugs or any felony."

subdivision was inapplicable for two reasons. First, subdivision (b)(2) expressly requires that the defendant be "*convicted . . .* of a misdemeanor not related to the use of drugs." (Italics added.) The charge of identity theft in violation of Penal Code section 530.5, subdivision (c)(1) was a misdemeanor not related to the use of drugs, but appellant was never *convicted* of that charge. Indeed, on February 21, 2012, the court, on the prosecutor's motion, dismissed the new case, which included the identity theft charge.

Second, appellant was asking the court to apply Proposition 36 in the present case, i.e., *case No. NA084631*, in which appellant on February 9, 2010, had pled no contest to bringing drugs into jail, a violation of Penal Code section 4573 alleged as count 1 in a *complaint* filed *under that case number*. Count 2 in *that* complaint alleged appellant possessed methamphetamine in violation of Health and Safety Code section 11377, subdivision (a), but the court dismissed that count 2 on February 9, 2010, pursuant to negotiations. Identity theft was count 2 in an *information* filed in the new case under a completely different case number, i.e., *case No. NA090771*.

The phrase " 'same proceeding' as used in [Penal Code] section 1210.1(b)(2) means the prosecution of crimes properly charged *in a single accusatory pleading*." (*People v. Barros* (2012) 209 Cal.App.4th 1581, 1589, italics added; *People v. Orabuena* (2004) 116 Cal.App.4th 84, 95 ["In order for the defendant to be convicted in the same proceeding, the disqualifying felony or misdemeanor would have to be charged in the accusatory pleading"].) Appellant was convicted of a nonviolent drug possession offense (bringing drugs into jail) in case No. NA084631, but was not convicted "in the same proceeding," within the meaning of Penal Code section 1210.1, subdivision (b)(2), of a misdemeanor not related to the use of drugs.

Fairly read, the trial court's comments on January 23, 2012, reflect the trial court erroneously believed appellant was statutorily ineligible for Proposition 36 probation in the present case (even though he already had been granted Proposition 36 probation starting on February 9, 2010, as a result of his no contest plea on that date). Moreover, the court never expressly disabused itself of this error during later proceedings that day or

11

during the proceedings on the next court date, i.e., February 21, 2012. Respondent's arguments do not compel a contrary conclusion.[4]

---

[4] Respondent, referring to the record of the January 23, 2012 proceedings, asserts, "Appellant requested Proposition 36 probation on case number NA090771." We disagree. As mentioned, fairly read, the record reflects that on January 23, 2012, appellant shifted the topic of discussion and referred to Proposition 36 and, in particular, to his "second violation on Prop 36." He was effectively requesting the court to reinstate him on Proposition 36 probation in the present case, the only case in which he had ever been on Proposition 36 probation, not in case No. NA090771. Accordingly, the trial court subsequently referred to a "charge like identity theft *along with the Prop 36 case*" (italics added), i.e., along with the *present* case. It was the trial court, not appellant, who introduced case No. NA090771, the new case, into the discussion.

Respondent, again referring to the January 23, 2012 proceedings, states, "The record reflects that the trial court *stated* that appellant was could [*sic*] not receive Proposition 36 probation *on case number NA090771*. (First italics added.) Respondent's statement misses the mark. As previously discussed, the trial court erred by concluding the new case precluded Proposition 36 probation in the *present case*. The trial court stated, "It has to be *all* a Prop 36 to get Prop 36." (*Sic*.) (Italics added.)

Finally, after quoting the trial court's comments on January 23, 2012, concerning the "problem" count 2, respondent states, "The trial court's statement of the law was correct. Appellant would not be eligible for Proposition 36 probation, *if* he had been convicted of the charged offenses in case number NA090771." (Italics added.) However, first, the trial court never said appellant *would* not be ineligible *if* he were *convicted* of the offenses in the new case. The trial court indicated appellant was *currently* ineligible for Proposition 36 probation, stating "if there is a *charge* like identity theft along with the Prop 36 case, you don't get Prop 36." (Italics added.) Second, the trial court's statement was incorrect because, as mentioned, as of January 23, 2012, when the court made the statement, appellant had not been *convicted* of any charge in the new case (indeed, the court would later dismiss the new case), and even if appellant had been so convicted, he would not have been convicted *in the same proceeding* as the present case for purposes of Penal Code section 1210.1, subdivision (b)(2). Respondent effectively concedes any conviction in the new case would not have been a conviction "in the same proceeding" as the present case when respondent states in a footnote in respondent's brief, "In *case number NA090771*, appellant was charged with misdemeanor identity theft on count 2. . . . In the *instant* matter, *case number NA084631*, count 2 had been dismissed." (Italics added.)

12

(2) *The Trial Court Erroneously Believed on February 21, 2012, that It Could Not Reinstate Appellant's Proposition 36 Probation.*

We also note that, as discussed below, on February 21, 2012, the trial court (Judge Romero) erroneously concluded appellant's violation of probation based on his providing false identification information to police precluded the trial court from reinstating appellant's Proposition 36 probation in the present case. Respondent concedes when a defendant violates Proposition 36 probation by committing an offense that is not a nonviolent drug possession offense, or by violating a non-drug-related probation condition, the trial court has discretion to reinstate Proposition 36 probation or to revoke the probation and sentence the defendant to prison. (Pen. Code, § 1210.1, subd. (f)(1) & (2).) " . . . 'The first time a probationer violates [a non-drug-related probation] . . . condition, the court has *discretion* to incarcerate the person. [Citation.]' [Citation.]" (*People v. Dixon* (2003) 113 Cal.App.4th 146, 151, italics added.) As appellant suggested to the trial court, if a court reinstates the defendant on probation, the court may intensify the Proposition 36 treatment plan. (Pen. Code, § 1210.1, subd. (f)(2).)

In the present case, on February 21, 2012, the court first stated, "if you violated Prop 36 in a non-drug-related manner, then Prop 36 *can* end, and you are subject to regular criminal *sentencing*. That's the theory why you're here for criminal *sentencing* on the *former* Prop 36 case." (Italics added.) The word "can" suggests the trial court was aware it had discretion to reinstate probation.

However, the trial court's reference to the case as a "former" Proposition 36 case implies the court believed the present case was at one time a Proposition 36 case, *but was no longer a Proposition 36 case as of February 21, 2012.* That belief was inconsistent with an inference from the word "can" that the trial court believed it had discretion to reinstate Proposition 36 probation. Similarly, the trial court's repeated references to "sentencing" permit the inference the court believed the only remaining task before it on February 21, 2012, was to sentence appellant, not to decide whether to reinstate probation.

13

Indeed, the trial court's comments above were consistent with a trial court belief, discussed *post*, that because on January 9, 2012, Judge Meyer found appellant in violation of probation in the present case based on appellant's provision of false identification information to police, the present case could not properly be viewed on February 21, 2012, as a Proposition 36 case and, on that date, it remained only to sentence appellant.

Moreover, the court's next statement was unqualified and categorical: "If you violate Prop 36 once in a non-drug-related way, Prop 36 *ends* and then you have criminal sentencing." (Italics added.) The court thereby clearly indicated that if appellant satisfied the condition, the court would then, as a matter of law, be required to terminate probation. This statement therefore conflicted with any suggestion that the court knew it had discretion to reinstate probation in the present case.

The court next stated, "So the theory is that you violated your Prop 36 by giving false information to a police officer, a criminal offense." This statement, fairly read in light of the court's previous categorical statement applicable in *all* cases, indicated that the theory as to how appellant violated Proposition 36 in a "non-drug-related way" in *the present case* was that he had given false information to police. Moreover, the trial court's reference to the word "theory" in this context introduced ambiguity and suggested the issue as to whether appellant had given false information was capable of being disputed, and thus was a proper subject for argument by the parties.

The court then stated, "So that *ends* Prop 36 for you, and you are subject to regular criminal sentencing." (Italics added.) In context, the court thereby implied that, *if* appellant gave false information to police, the court was required to terminate Proposition 36 probation. This last statement by the court was unqualified and did not refer to "theory" or suggest the statement was capable of being disputed or was a proper subject of argument.

14

The court next stated, "That's the theory. If you want to address that, I'll hear you." These statements reasonably may be construed as (1) a reference to the earlier "theory" that appellant violated Proposition 36 in a "non-drug-related way" in the present case by giving false information to police, and (2) an invitation to appellant to address that issue, as distinct from the issue of whether, if appellant so violated probation, the court had discretion to reinstate probation.

Appellant, in pro per, apparently so understood the court. Appellant's first comment in reply pertained to "the theory of [appellant] being *in violation*," (italics added) not to whether the court had discretion to reinstate probation assuming a violation had occurred.

Moreover, after appellant argued he was not in violation of probation, the court commented it would defer to Judge Meyer since she "held the evidentiary hearing on *this narrow issue*." (Italics added.) This comment suggested Judge Romero viewed the issue before him as a narrow one, i.e., whether appellant had violated probation, a matter as to which Judge Meyer already had made a dispositive factual finding. Judge Romero by this comment gave no hint an additional issue was present, i.e., whether, even if appellant violated probation, the court should reinstate probation. The court's subsequent comments clearly indicate it focused on sentencing, not whether the court could reinstate probation, and when appellant attempted to discuss his possible participation in a drug program, the court indicated instead that it was interested in the issue of precommitment credits.

We conclude appellant has demonstrated the trial court erroneously believed that if appellant violated probation because he provided false identification information to police, the trial court could not reinstate appellant's Proposition 36 probation. Respondent's arguments do not compel a contrary conclusion.[5]

---

[5]     Respondent, arguing no such trial court error occurred, states, "[T]he trial court specifically noted that, on October 29, 2010, appellant had previously admitted a violation of a non-drug-related condition of his Proposition 36 probation, had his probation revoked, and had his Proposition 36 probation reinstated." Assuming the trial

We will remand the matter to permit the trial court to exercise its discretion in deciding whether or not to reinstate appellant's Proposition 36 probation. We express no opinion as to how the trial court should exercise that discretion or as to what appellant's sentence should be in the event the trial court decides not to reinstate appellant's probation.

---

court derived its information from the minute order pertaining to the October 29, 2010 proceedings in the present case, that minute order does reflect appellant admitted he violated probation based on a previous failure to appear in court, and the court on October 29, 2010, subsequently found appellant in violation of probation, revoked probation, but reinstated it. However, Judge Romero, who presided at the February 21, 2012 proceedings in the present case, was not the judge who presided during the October 29, 2010 proceedings, and Judge Romero did not, on February 21, 2012, expressly acknowledge appellant admitted a probation violation *based* on a failure to appear, i.e., a non-drug-related reason. Judge Romero's reference on February 21, 2012, to the events of October 29, 2010, was part of his lengthy recitation of numerous events in the history of the proceedings in the present case, and nothing in that recitation suggests Judge Romero focused on any significance of the events of October 29, 2010, in particular to the issue of whether, on February 21, 2012, the court had discretion to reinstate probation.

Moreover, we do not consider in a vacuum the impact of the trial court's February 21, 2012 comment concerning the October 29, 2010 proceedings on the issue of whether the trial court on February 21, 2012, erroneously concluded that if appellant violated probation by providing false identification information to police, the trial court could not reinstate probation. As discussed, the court, by other comments on February 21, 2012, clearly and erroneously concluded that if appellant so violated probation, the court had to terminate probation. The court already had adopted an erroneously narrow view of the applicability of Proposition 36 when the court erroneously concluded on January 23, 2012, that appellant was statutorily ineligible for Proposition 36 probation, a conclusion the court never expressly rejected later.

16

## *DISPOSITION*

The judgment is affirmed, except appellant's sentence is vacated, the matter is remanded, and the trial court is directed to exercise its discretion in deciding whether or not to reinstate appellant's Proposition 36 probation and for further proceedings consistent with this opinion.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


KITCHING, J.

We concur:


CROSKEY, Acting P. J.



ALDRICH, J.


17